## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

COMMODITY FUTURES TRADING )
COMMISSION, )
                            )
          **Plaintiff,** )
    **v.** )          **CIVIL ACTION**
                            )          **No. 03-2193-CM**
WALL STREET UNDERGROUND, INC., )
et al., )
                            )
          **Defendants.** )
                            )

### ORDER GRANTING VERIFIED MOTION SEEKING APPROVAL OF RECEIVER'S SUPPLEMENTAL REPORT OF ACTIVITIES AND RECOMMENDING DISTRIBUTION OF WALL STREET UNDERGROUND FUNDS, INCLUDING AN ACCOUNTING AND REQUEST FOR PAYMENT OF FEES AND COSTS OF RECEIVER AND RECEIVER'S COUNSEL

Upon consideration of the Verified Motion for Order Approving Receiver's Supplemental Report of Activities Ordered By The Court's March 5, 2007 Bar Date Order And Recommended Distribution of WSU Funds, Including An Accounting and Request For Payment of Fees and Costs of Receiver and Receiver's Counsel (Doc. #275), which Verified Motion was consented to by the Plaintiff Commodity Future Trading Commission ("CFTC") and the United States Attorney's Office, and it appearing that no oppositions or objections were filed by the May 18, 2007 response date, and based upon the sworn statement of the Receiver in the Verified Motion, the Court finds as follows:

1.      Robb Evans & Associates LLC was appointed Receiver solely for Wall Street Underground, Inc. ("WSU").  Memorandum and Order, entered March 18, 2004 (Doc. 136). Plaintiff CFTC had requested appointment of a Receiver "to ensure that WSU's assets are preserved for the benefit of its allegedly defrauded customers," "to safeguard the assets in an account that allegedly belongs to WSU at Euro Bank in the Grand Cayman Islands," and "to ensure that the funds are collected and held on behalf of WSU's allegedly defrauded customers."

Doc. 136 at p. 2; Plaintiff's Amended Motion for Appointment of Receiver (Doc. 125). The Court concluded that "appointment of a receiver is necessary in this case to preserve any of WSU's assets that may ultimately provide relief for WSU's allegedly defrauded customers." Doc. 136 at p. 3; see also this Court's March 5, 2007 Bar Date Order (Doc. 272) at ¶G. The Receiver was authorized, empowered, and directed to take immediate possession of all of WSU's assets and all other property of every kind and wherever located belonging to WSU. Doc. 136 at p. 4.

2.     On July 11, 2006, this Court entered judgment against WSU in the amount of $2,374,582.00 (the "Restitution Amount") and ordered WSU to immediately pay the Restitution Amount "to make whole each and every customer whose funds were received by Guarino and WSU and who were harmed by the wrongful acts as alleged in the Complaint." Doc. 268 at p. 8, ¶D. The Court ordered WSU to pay the Restitution Amount "to the Court-appointed Receiver" and that "[d]istribution to the injured customers of the Restitution Amount or any and all other funds collected by the Receiver shall be made by the Receiver as ordered by this Court." Id. at p. 9, ¶G.

3.     The Receiver has collected approximately $1,200,707.37 in WSU funds from the liquidators of Euro Bank (the "WSU Funds"). Bar Date Order (Doc. 272) at ¶G.

4.     This Court found that the Receiver has made its best efforts to identify potential Investors and approved the Receiver's efforts, the Notices and the method of identifying the Responding Investors. Bar Date Order (Doc. 272) at ¶Q.

5.     To complete the receivership and make distributions of the WSU funds, the Court ordered the Receiver to serve a notice of the Bar Date and proof of claim form on all known entities holding potential claims against WSU, including but not limited to the WSU Investors, the Non-Investor Creditors, the Taxing Entities, and the Non-WSU Creditors, no later than ten

(10) days from the entry of the Bar Date Order, and other activities.  Bar Date Order (Doc. 272) at pp. 5-6.  This Court established the Bar Date as the date thirty (30) days from the Service Date. Id.

6.      As required by the Bar Date Order, on March 12, 2007 (within ten [10 days] of the Bar Date Order), the Receiver served all known entities holding potential claims against WSU, including the Non-Investor Creditors, the Taxing Entities, and the Non-WSU Creditors (except the Responding Investors): (a) a notice of Bar Date in the form attached to the Bar Date Order as Exhibit 1, and (b) a proof of claim form (the "Proof of Claim") in the form attached to the Bar Date Order as Exhibit 2.  Affidavit of Service and Notice of Publications (Establishing April 11, 2007 at 5:00 p.m., CDT, as the Deadline for Filing Proof of Claim) (Doc. 274).

7.      As required by the Bar Date Order, the Receiver published notice of the Bar Date in the *Daily Record* serving Jackson County, Missouri (on March 16, 2007); the *Wyandotte Echo*, serving Kansas City, Kansas (on March 15, 2007); the *Olathe Daily News*, serving Johnson County, Kansas   (on March 16, 2007); *The Kansas City Star*, serving metropolitan Kansas City (on March 16, 2007), and the national edition of the *Wall Street Journal* (on March 16, 2007).  (Doc. 274).

8.      The service and publication of the above notices established April 11, 2007 at 5:00 p.m., CDT, as the deadline for filing proofs of claim. Id.

9.      WSU Funds total $1,206,144.20 as of April 30, 2007.  (Exh. A to Verified Motion (Doc. 275)

10.     Claims made on the WSU Funds total at least $1,660,165.80 and thus greatly exceed the amount of WSU Funds.

11.     The claims made on WSU Funds are as follows:  Claims by 234 WSU Investors; by the Receiver for its fees and expenses from December 1, 2005 through April 30, 2007; by Receiver's counsel for its fees and expenses from January 11, 2006 through April 30, 2007; by two law firms, a landlord and a taxing authority against Web Fulfillment Centre, Inc. (but not against WSU), and by a law firm against Nicholas A. Guarino (but not against WSU).   The claims against Web Fulfillment Centre, Inc. and Nicholas A. Guarino (the "Non-WSU" claims) total $497,672.11.

12.     After reviewing all claims, the Receiver, in its Verified Motion (Doc. # 275 at ¶ 17-39), recommended that (a) the claims of the 223 WSU Investors (totaling $1,045,886.20) listed in Exhibit C to the motion be allowed; (b) the claims of 11 WSU Investors (totaling $45,097) listed on Exhibit D should be disallowed for failing to provide adequate proof of payment; (c) the claim of the Receiver for its unreimbursed fees and expenses of $16,599.03 should be allowed; (d) the claim of the Receiver's counsel for its unreimbursed fees and expenses of $54,911.51 should be allowed; (e) the five Non-WSU Claims (by Anderson Kill, Berkowitz Oliver, Rouse Hendricks, the Kansas Department of Revenue, and Merriam Enterprises) should be disallowed and forever barred against the WSU Funds; (f) all other claims not received by the Receiver by the Bar Date of April 11, 2007 should be disallowed and forever barred against the WSU Funds; (g) any claims by the Receiver and the Receiver's counsel for services rendered after April 30, 2007 should be allowed; and (h) ordering that any WSU Funds remaining after the foregoing payments should be paid to the CFTC as payment towards the Civil Monetary Payment ordered by this Court.

13.      Neither Web Fulfillment Centre, Inc. nor Nicholas Guarino submitted any claim requesting payment from WSU Funds to any Non-WSU Claimants.  WSU also did not submit any claims requesting payment from WSU Funds to any Non-WSU Claimants.

14.      On May 2, 2007, the Receiver served copies of its Verified Motion on the parties identified in its Certificate of Service (Doc. # 275 at p. 15) and in its Addendum 1 to the Certificate of Service (pp. 16-17).  The persons and entities listed on Addendum 1 include each of the 11 WSU Investors identified on Exhibit D whose claims the Receiver recommends be disallowed, and each of the five Non-WSU Claimants identified on Exhibits G, H, I, K and M whose claims the Receiver also recommends be disallowed.

15.      No oppositions or objections were filed to the Verified Motion by the May 18, 2007 response date.

16.      Section 13a-1 of the Commodity Exchange Act, 7 U.S.C. §13a-1, grants this Court broad authority to order relief necessary to enforce the appointment of a receiver.  Mem. and Order (Doc. 136) at pp. 1-2; see, e.g., Commodity Futures Trading Comm'n v. Co Petro Mktg. Group, 680 F.2d 573, 582-83 (9th Cir. 1982) (upholding district court's appointment of receiver); Commodity Futures Trading Comm'n. v. Muller, 570 F.2d1296, 1300-01 (5th Cir. 1978) (upholding district court's injunction preventing defendant from dissipating the funds that he allegedly misappropriated); Commodity Futures Trading Comm'n. v. Chilcott Portfolio Mgmt., Inc., 713 F.2d 1477, 1480 (10th Cir. 1983) (noting the district court's appointment of a receiver).

17.      This Court previously concluded that "appointment of a receiver is necessary in this case to preserve any of WSU's assets that may ultimately provide relief for WSU's allegedly defrauded customers." ¶2 above; Doc. 136 at p. 3; see also Bar Date Order (Doc. 272) at ¶G.

5

Disgorgement of assets, such as the WSU Funds, serves the purpose of depriving WSU of the benefit of its wrongdoing and compensating the victims of its illegal acts.

18.     A district court may, within its discretion, forbid or limit payment of attorneys fees out of frozen assets, especially where the frozen assets fall short of the amount needed to compensate injured customers. Commodity Futures Trading Commission v. Noble Metals International, 67 F.3d 766, 775 (9th Cir. 1995), cert. denied, 519 U.S. 815 (1996).  The Non-WSU Claims are unrelated to WSU and the Receiver's appointment to protect WSU's assets, are not substantiated, and are inconsistent with this Court's and other courts' principle of compensating the injured customers.  See paragraphs 16 and 17 above.

19.     The CFTC and the United States Attorney's Office have consented to the Verified Motion.

## ORDER

Having received no oppositions or objections to the Verified Motion and for Good Cause Shown, the Verified Motion is Granted and IT IS THEREFORE ORDERED THAT:

The claims of the 223 Approved Investors listed in Exhibit C to the Verified Motion are allowed and the Receiver is authorized to distribute $1,045,886.20 from the WSU Funds to pay said claims in Exhibit C;

A.     The Receiver's request for reimbursement of its un-reimbursed fees and expenses for the period December 1, 2005 through April 30, 2007 in the amount of $16,599.03 is approved and the Receiver is authorized to distribute this amount from the WSU Funds to pay said fees and expenses;

B.     The Receiver's request for reimbursement of the un-reimbursed fees and expenses of Receiver's counsel from January 12, 2006 through April 30, 2007 in the amount of $54,911.51

is approved and the Receiver is authorized to distribute this amount from the WSU Funds to pay said fees and expenses;

     C.     The eleven Disallowed Investor Claims listed in Exhibit D to the Verified Motion are disallowed and forever barred;

     D.     The five Non-WSU Claims (by Anderson Kill, Berkowitz Oliver, Rouse Hendricks, the Kansas Department of Revenue, and Merriam Enterprises – Exhibits G, H, I, K and M, respectively) against the WSU Funds are disallowed and forever barred;

     E.     Any and all claims (including additional Investor Claims, Non-Investor Claims, and Non-WSU Claims) against the WSU Funds not submitted to the Receiver by the Bar Date of April 11, 2007 are disallowed and forever barred;

     F.     The WSU Funds remaining after payment of the amounts in paragraphs A, B and C above shall be retained in the WSU Funds for payment of future fees and expenses of the Receiver and Receiver's counsel;

     G.     Any WSU Funds remaining after payment of the 223 Approved Investors claims and all past and future fees and expenses of the Receiver and Receiver's counsel following termination of the Receivership shall be paid to the CFTC as payment towards the Civil Monetary Penalty ordered by this Court in its Order of July 11, 2006;

     H.     This Order is final and immediately appealable upon its entry; and

     I.     This case is closed and the Receiver is discharged, upon the Receiver certifying distribution of the funds as provided herein.

     IT IS SO ORDERED

Date:May 25, 2007          **s/ Carlos Murguia**
                         **U.S. District Judge**